Gary J. Smith (SBN 141393)
Daniel M. Brian (SBN 262485)
BEVERIDGE & DIAMOND, P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone:  (415) 262-4045
Facsimile:  (415) 262-4040
Email:  gsmith@bdlaw.com
        dbrian@bdlaw.com

(Additional Counsel are listed on the next page)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

POTRERO HILLS LANDFILL, INC., BLT ENTERPRISES OF SACRAMENTO, INC., BRENTWOOD DISPOSAL SERVICE, INC., CONCORD DISPOSAL SERVICE, INC., CONTRA COSTA WASTE SERVICE, INC., DISCOVERY BAY DISPOSAL, INC., NOVATO DISPOSAL SERVICE, INC., OAKLEY DISPOSAL SERVICE, INC., PACIFIC COAST DISPOSAL CORPORATION, PITTSBURG DISPOSAL AND DEBRIS BOX SERVICE, INC., REDWOOD EMPIRE DISPOSAL, INC., RIO VISTA SANITATION SERVICE, INC., ROHNERT PARK DISPOSAL, INC., SANTA ROSA RECYCLING AND COLLECTION, INC., SUNRISE GARBAGE SERVICE, INC., TIMBER COVE RECYCLING, INC., WASTE CONNECTIONS, INC. WASTE CONNECTIONS OF CALIFORNIA, INC., WEST SONOMA COUNTY DISPOSAL SERVICE, INC., WEST SONOMA COUNTY TRANSFER, INC., and WINDSOR REFUSE AND RECYCLING, INC.

          Plaintiffs,

   v.

COUNTY OF SOLANO,

          Defendant.

No. _____

**COMPLAINT**

1
COMPLAINT

James B. Slaughter, DC Bar No. 417273 (Pro Hac Vice admission pending)
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W., Suite 700
Washington, D.C.  20005-3311
Telephone:  (202) 789-6040
Facsimile:  (202) 789-6190
Email:  jslaughter@bdlaw.com

Attorneys for Plaintiffs Potrero Hills Landfill, Inc., BLT Enterprises of Sacramento, Inc., Brentwood Disposal Service, Inc., Concord Disposal Service, Inc., Contra Costa Waste Service, Inc., Discovery Bay Disposal, Inc., Novato Disposal Service, Inc., Oakley Disposal Service, Inc., Pacific Coast Disposal Corporation, Pittsburg Disposal and Debris Box Service, Inc., Redwood Empire Disposal, Inc., Rio Vista Sanitation Service, Inc., Rohnert Park Disposal, Inc., Santa Rosa Recycling and Collection, Inc., Sunrise Garbage Service, Inc., Timber Cove Recycling, Inc., Waste Connections, Inc., Waste Connections of California, Inc., West Sonoma County Disposal Service, Inc., West Sonoma County Transfer, Inc., and Windsor Refuse and Recycling, Inc.

Plaintiffs Potrero Hills Landfill, Inc., BLT Enterprises of Sacramento, Inc., Brentwood Disposal Service, Inc., Concord Disposal Service, Inc., Contra Costa Waste Service, Inc., Discovery Bay Disposal, Inc., Novato Disposal Service, Inc., Oakley Disposal Service, Inc., Pacific Coast Disposal Corporation, Pittsburg Disposal and Debris Box Service, Inc., Redwood Empire Disposal, Inc., Rio Vista Sanitation Service, Inc., Rohnert Park Disposal, Inc., Santa Rosa Recycling and Collection, Inc., Sunrise Garbage Service, Inc., Timber Cove Recycling, Inc., Waste Connections, Inc., Waste Connections of California, Inc., West Sonoma County Disposal Service, Inc., West Sonoma County Transfer, Inc., and Windsor Refuse and Recycling, Inc. submit this Complaint against County of Solano and allege as follows:

**I.     INTRODUCTION**

1.     This case concerns whether voters in one of California's 58 counties can enact a discriminatory ordinance that obstructs the free flow of articles in commerce.  Measure E, a ballot initiative enacted by voters in Solano County on November 6, 1984, burdens interstate commerce by severely restricting the quantity of out-of-county municipal solid waste that may enter Solano County for landfill disposal.  The Measure prohibits out-of-county solid waste from entering Solano County in excess of 95,000 tons per year.  The Plaintiffs consist of over twenty companies involved in the solid waste and recycling businesses that rely on the free flow of solid

1   waste in interstate commerce in order to operate their businesses and serve their customers.

2            2.      The Potrero Hills Landfill ("PHLF"), one of two landfills in Solano County, is expected to close in 2011 due to capacity limitations.  In 2002, PHLF sought Solano County approval to extend the life of the landfill by expanding its disposal area.  Litigation brought under the California Environmental Quality Act (CEQA) now being led by Northern California Recycling Association ("NCRA") and Sustainability, Parks, Recycling and Wildlife Legal Defense Fund ("SPRAWLDEF") has ensnared the permit approval process over the last seven years.  In June 2009, as the final hearing in the CEQA litigation approached, NCRA and SPRAWLDEF each filed separate complaints in Solano County Superior Court against Defendant Solano County, seeking to compel Defendant Solano County to enforce Measure E and arguing that Measure E poses an additional reason why Solano County may not approve PHLF's expansion.  A third similar lawsuit has since been filed.

         3.      Plaintiffs bring this suit seeking declaratory and injunctive relief because, unless Measure E is declared to be unlawful, Defendant Solano County will be compelled to enforce Measure E, thereby causing Plaintiffs substantial injury in contravention of their constitutional rights.

         4.      Municipal solid wastes are articles in commerce, and discriminatory local laws restricting their free flow in interstate commerce contravene the Commerce Clause of the United States Constitution.

         5.      The intent and effect of Measure E are to discriminate against solid wastes generated from neighboring counties and cities in the San Francisco Bay Area (the "Bay Area") and Sacramento River Delta regions of California, as well as from neighboring states.  Measure E facially and expressly discriminates against wastes that originate or are collected "outside the territorial limits of Solano County."  Measure E allows limitless disposal of in-county waste at local landfills, but severely restricts the amount of out-of-county waste these same landfills may accept.

         6.      Enforcement of Measure E will exacerbate waste management challenges in the Bay Area and the state of California as a whole.  Substantial adverse effects on interstate

commerce will result as municipal waste management districts and private service providers such as Plaintiffs will be deprived of significant revenue sources and/or forced to incur increased operating costs. Enforcement of Measure E also will cause environmental harm as wastes generated throughout Northern California will likely require transport to more distant disposal facilities.

7. Enforcement of Measure E will prevent PHLF from accepting significant volumes of out-of-county waste and will impair competition in the national market for solid waste disposal facilities. The owners of most privately-held solid waste landfills are large national corporations with operations in many states. Ensuring that the largest companies in this industry face significant competition is essential to prevent the undue escalation of disposal charges. PHLF, in particular, plays an important role in maintaining competition for the largest companies in the industry. Indeed, PHLF was sold on April 21, 2009 pursuant to a U.S. Department of Justice-mandated divestiture intended to preserve competition in light of the merger of Republic Services, Inc. with Allied Waste Industries, Inc.

8. Accordingly, Plaintiffs bring this suit to have Measure E enjoined and declared unlawful.

II.   JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (§ 1983 jurisdiction), and 28 U.S.C. § 2201 (declaratory judgment).

10. For purposes of the declaratory relief sought in this Complaint, an actual case or controversy within the meaning of 28 U.S.C. § 2201 exists between Plaintiffs and Defendant as a result of an imminent threat of enforcement of Measure E and its conflict with the Plaintiffs' constitutional rights. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and related permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

11. Venue lies in the Eastern District of California, the District wherein Measure E illegally restricts the importation of out-of-county waste, thereby impermissibly interfering with interstate commerce in violation of the Commerce Clause of the United States

Constitution. While the impacts of Measure E will be felt throughout the Bay Area and the state of California, venue is proper in the Eastern District of California because it is where a substantial part of the events giving rise to the claims occurred, it is where a substantial part of the property that is the subject of this action is situated and it is where the Defendant resides.

III.    PARTIES

   A.    Plaintiffs

      12.    Potrero Hills Landfill, Inc. operates PHLF, one of two active municipal solid waste landfills in Solano County.

      13.    BLT Enterprises of Sacramento, Inc., ("BLT") is a privately owned, Southern California-based company that has for over twenty years specialized in the development and operation of waste transfer stations and the processing and marketing of recyclable materials. BLT's two recycling and transfer stations process a combined total of up to 2,500 tons of waste per day. BLT operates the Sacramento Recycling and Transfer Station pursuant to a service agreement with the City of Sacramento, California, for municipal solid waste transfer, transport, disposal, processing and marketing of recovered materials. Lockwood Landfill, near Reno, Nevada, is designated as the primary disposal facility in the service agreement. PHLF is an alternate disposal facility. When road conditions or other circumstances dictate, waste that BLT would otherwise dispose in Nevada may be disposed at PHLF. Enforcement of Measure E would effectively bar BLT from using PHLF, requiring BLT to seek other alternate disposal sites and subjecting it to increased disposal fees at such new sites as well as at Lockwood Landfill. The competition between PHLF and Lockwood Landfill helps BLT control costs for the benefit of the people of Sacramento.

      14.    Brentwood Disposal Service, Inc. provides residential and commercial solid waste collection and recycling services to the unincorporated area surrounding the City of Brentwood, California, in Contra Costa County.

      15.    Concord Disposal Service, Inc. provides residential and commercial garbage and recycling collection services to the approximately 121,000 residents of the City of Concord in Contra Costa County. The Concord-based Garaventa Family has owned and

operated Concord Disposal Service for more than seventy years, making it one of the few remaining family-owned garbage and recycling companies in Northern California. Concord Disposal Service relies heavily on PHLF to accept the waste it collects from the City of Concord. In 2007, the City of Concord sent just over 97,000 tons of waste to PHLF. The reliance on PHLF makes environmental as well as economic sense: of the twenty-six disposal facilities that accepted waste from Contra Costa County in 2007, PHLF is the third closest in driving distance to the City of Concord, with only two smaller in-county landfills being closer. Enforcement of Measure E would severely impact – if not prohibit outright – Concord Disposal Service's use of PHLF to dispose collected wastes, requiring the company to seek alternate disposal sites and subjecting it to increased disposal fees at such new sites.

16. Contra Costa Waste Service, Inc. owns and operates the recycling center and transfer station in the City of Pittsburg, serving the public and franchised haulers in Contra Costa County.

17. Discovery Bay Disposal, Inc. provides residential and commercial solid waste collection and recycling services to the Town of Discovery Bay area in unincorporated Contra Costa County.

18. Novato Disposal Service, Inc. provides residential and commercial solid waste collection and recycling services to the City of Novato, California, in Marin County.

19. Oakley Disposal Service, Inc. provides residential and commercial solid waste collection and recycling services to the Ironhouse Sanitary District, including the City of Oakley, California, and surrounding unincorporated areas of Contra Costa County.

20. Pacific Coast Disposal Corporation provides residential and commercial solid waste collection and recycling services in Sonoma and Mendocino Counties.

21. Pittsburg Disposal and Debris Box Service, Inc. provides residential and commercial solid waste collection and recycling services to the City of Pittsburg, California, and the Bay Point area in unincorporated Contra Costa County.

22. Redwood Empire Disposal, Inc. provides residential and commercial solid waste collection and recycling services in Sonoma and Marin Counties.

23. Rio Vista Sanitation Service, Inc. provides residential and commercial solid waste collection and recycling services to the City of Rio Vista, California and unincorporated areas of Solano County. Plaintiff Rio Vista Sanitation Service, Inc., hauls Solano waste to a diversion facility in Contra Costa County and non-recyclable solid waste residuals are then transported to Solano County.

24. Rohnert Park Disposal, Inc. provides residential and commercial solid waste collection and recycling services to the City of Rohnert Park, California, in Sonoma County.

25. Santa Rosa Recycling and Collection, Inc. provides residential and commercial solid waste collection and recycling services to the City of Santa Rosa, California, in Sonoma County.

26. Sunrise Garbage Service, Inc. provides residential and commercial solid waste collection and recycling services in Sonoma County.

27. Timber Cove Recycling, Inc. provides solid waste recycling services in Northern California, including the sale of recycling products to overseas markets.

28. Plaintiff Waste Connections, Inc. is an integrated solid waste services company that provides solid waste collection, transfer, disposal and recycling services in mostly secondary markets in the Western and Southern United States. It is headquartered in Folsom, California. As of June 30, 2009, Waste Connections served approximately two million residential, commercial and industrial customers from a network of operations in 26 states. As of that date, it owned or operated a network of 138 solid waste collection operations, 55 transfer stations, 6 intermodal facilities, 36 recycling operations, 42 municipal solid waste landfills and two construction and demolition landfills.

29. Waste Connections of California, Inc., which does business as El Dorado Disposal Service, provides garbage collection services to suburbanized and rural areas of western and central El Dorado County. El Dorado County is home to only one active landfill, but that landfill is unable to accept commercially-hauled municipal solid waste. As a result, El Dorado Disposal must transport collected wastes to other California counties such as Solano County, as

Case 2:09-cv-02514-JAM-JFM   Document 1   Filed 09/08/09   Page 8 of 20

well as to the state of Nevada. PHLF is a cost-efficient disposal facility for El Dorado Disposal due to lower tipping fees and the lower cost of moving waste downhill into Solano County rather than trucking waste through the Sierra Nevada Mountains to reach Nevada. Enforcement of Measure E would effectively deprive El Dorado Disposal of one of its most cost-efficient disposal destinations and would require the company to accept higher combined tipping fees and transportations costs associated with both in-state and out-of-state alternatives.

30. West Sonoma County Disposal Service, Inc. provides residential and commercial solid waste collection and recycling services in Sonoma County.

31. West Sonoma County Transfer, Inc. provides transfer station operation services and solid waste refuse hauling in Sonoma County and Mendocino.

32. Windsor Refuse and Recycling, Inc. provides residential and commercial solid waste collection and recycling services to the City of Windsor, California, in Sonoma County.

B.  Defendant

33. Defendant Solano County is a local governmental entity and one of nine counties located in the Bay Area.

IV. STATEMENT OF FACTS

A.  Solid Waste Management in Solano County and the San Francisco Bay Area

34. Effective and efficient solid waste management is vital to the nation's public health, safety and welfare, the national economy, and the quality of our natural environment. According to the United States Environmental Protection Agency, Americans generated more than 254,000,000 tons of trash in 2007. Roughly 39,600,000 tons of solid waste – more than fifteen percent of the national total – was generated by Californians, according to the California Integrated Waste Management Board.

35. Landfill disposal is the most common, cost effective and environmentally safe method for the ultimate disposal of municipal solid waste. Modern landfills are well-engineered facilities that are located, designed, operated and monitored to ensure compliance with multiple levels of federal and state regulations. Federal regulations promulgated under

8
COMPLAINT

Subtitle D of the Resource, Conservation and Recovery Act ("RCRA") include location restrictions to ensure landfills are built in suitable areas, composite liner and leachate collection system requirements to protect soil and groundwater from leachate, best operating practices, groundwater monitoring requirements, closure care requirements, corrective action provisions in the event of landfill release, and financial assurance requirements to provide funding for environmental protection during and after landfill closure. RCRA embodies the Congressional determination that solid waste disposal affects interstate commerce and constitutes a matter of national scope and concern. California landfills are regulated by the California Integrated Waste Management Board. All proposed or active landfills are required to obtain a full solid waste facility permit to operate.

36. With several major cities, towns, airports, military bases, state and national parks, and a massive network of intrastate and interstate roads, highways and railroads, the Bay Area is an integral component of the national economy with a unique set of environmental and land-use challenges. The Bay Area consists of nine counties (Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Solano and Sonoma) and more than one hundred cities in just under 7,000 square miles. When defined as a Combined Statistical Area by the United States Census Bureau, the Bay Area is the sixth largest in the United States with over 7.2 million inhabitants.

37. Waste management is one the most important challenges facing the Bay Area. The significant population growth expected for the region heightens the importance of sound waste management infrastructure. Over the next twenty-five years, the nine counties are expected to add a total of 1,655,400 new residents, or 66,000 new residents per year. Most population growth is expected in areas other than Solano County such as San Francisco, Contra Costa, San Mateo and Santa Clara counties.

38. The Bay Area faces space limitations, high land values, and unfavorable hydrogeological conditions that make it impossible or impractical to establish safe waste disposal facilities in many locations. The location restrictions contained in EPA's municipal landfill regulations further limit the number of suitable landfill sites. For many Bay Area communities,

1   dependence on out-of-county facilities is an essential element of waste disposal planning.

2       39.    Solano County is the third largest county by area in the Bay Area, but it
3   contains only about 5.5% of the region's overall population, with only Marin and Napa counties
4   having smaller populations.  As one of the least populated and least urbanized parts of the Bay
5   Area, Solano County serves an important role in meeting regional waste management needs.

6       40.    The collection, transportation, and ultimate landfill disposal of solid waste
7   at a major landfill like Potrero Hills is a large-scale operation in interstate commerce carried out
8   by scores of businesses and thousands of workers.  Operations are almost never confined within
9   county boundaries, and often cross state borders.  The nine counties within the Bay Area
10  routinely transport wastes across county lines for landfill disposal, exporting waste to more than
11  twelve other counties on average.  These export counties range from neighboring counties to
12  others along the I-5 corridor.  Indeed, each of the nine Bay Area counties has in the last five
13  years exported solid wastes as far south as Los Angeles County for landfill disposal.

14      41.    Solano County exports a significant portion of its waste.  According to the
15  California Integrated Waste Management Board, in 2008 the County exported 32% (over
16  123,000 tons) of its waste to Contra Costa County and other counties.  Solano County also
17  imports waste from counties as far south as Imperial and Los Angeles, and as far north as
18  Humboldt.  In 2004, Solano County imported roughly 745,000 tons of waste from 37 counties
19  and also from out-of-state sources.  The waste tonnage imported and exported from Solano
20  County is significantly greater than the 95,000 ton import restriction imposed by Measure E.
21  Effective and efficient waste management necessarily depends on the free movement of solid
22  wastes and the absence of discriminatory protectionist caps such as Measure E.

23      42.    Solid waste is transported regularly across state lines.  The Roosevelt
24  Landfill in Washington's Klickitat County is an example of one of many disposal facilities that
25  accept the millions of tons of solid waste crossing state and even international borders each year.
26  Napa County began exporting most of its solid waste by rail to the Roosevelt Landfill after the
27  closure of its primary disposal facility in 1995.  More recently, in 2007, the Roosevelt Landfill
28  successfully participated in a competitive bidding process to accept waste from the City of

Honolulu, Hawaii. Faced with shrinking landfill capacity, Honolulu sought bids from companies that could haul at least 100,000 tons of solid waste per year to the mainland United States. The Seattle-based company Hawaiian Waste Systems LLC was awarded the contract that involved transporting waste by barge to the Washington landfill. While Honolulu stands to lose some $12 million in tipping fees, the Roosevelt Landfill is an economic boon for Klickitat County. The processing and transportation of waste from Hawaii to Washington stimulates interstate commerce by allowing the forces of supply and demand to promote competition and efficiency within the waste disposal industry. As a local barricade to the free flow of articles in interstate commerce, Measure E burdens interstate commerce and deprives Plaintiffs of the ability to participate fully in the competitive bidding process for regional and interstate waste import contracts.

### B. Potrero Hills Landfill

43. One of only two landfills in Solano County, PHLF is an important feature of the Bay Area's waste disposal infrastructure. Located adjacent to Travis Air Force Base and the I-80 transportation corridor, the 320-acre facility is situated in a valley where the underlying clay soils are impermeable. Additional claystone and shale deposits beneath the site provide hydraulic separation from groundwater. These conditions make PHLF's location ideal for use as a waste disposal facility in a region of great demand and low supply.

44. Currently, PHLF receives on an annual basis approximately 900,000 tons of solid waste, 600,000 tons of which comes from jurisdictions outside of Solano County including Sonoma, Contra Costa and Santa Clara Counties. Measure E limits all solid waste imports into all of Solano County to 95,000 tons per year, 16% of the waste imports going to PHLF alone.

45. PHLF is operated lawfully pursuant to a 1989 county-issued Use Permit, U-88-33. According to its 1989 Use Permit, PHLF is expected to close in 2011 due to capacity limitations. In 2002, PHLF sought County approval to extend the life of the landfill by expanding its disposal area from 320 acres to 580 acres. Although the adjacent acreage proposed for expansion shares the same favorable environmental and hydrological characteristics as the

current PHLF site, litigation under CEQA has ensnared the permit approval process over the last seven years. Indeed, Defendant's most recent action in connection with the review and approval of the proposed expansion has generated three new lawsuits filed in California state court. Plaintiffs in these three lawsuits seek to compel the County to enforce Measure E, and they contend that Measure E prohibits the County from approving the expansion of PHLF because the expansion would be unnecessary if PHLF were forced to abide by Measure E's drastic limits on out-of-county waste.

46. The former owner of PHLF, Republic Services, Inc., recently acquired Allied Waste Industries, Inc. pursuant to a June 2008 merger agreement. Prior to that transaction, Republic was the third largest waste hauling and disposal company in the country and Allied was the second largest. As a condition of allowing the merger to be completed, and to prevent any substantial lessening of competition in a number of waste disposal markets affected by the merger, the United States and the State of California, among others, entered into a Consent Judgment with Republic and Allied in December 2008 that required the divestiture of certain assets held by the merging companies. See 73 Fed. Reg. 76,383 (Dec. 16, 2008).

47. One of the assets Republic was required to divest was PHLF. The United States and the State of California were concerned that the merger would reduce from three to two the number of significant competitors for the disposal of solid waste operating in the Bay Area counties of Contra Costa, Solano and Alameda. The purpose of the divestiture order was to create an opportunity for a new entrant to the Bay Area market to offer solid waste disposal services in competition with the two largest operators. Plaintiff Waste Connections purchased PHLF on April 21, 2009 in reliance on and in fulfillment of the Consent Judgment's goal to promote industry competition.

48. Enforcement of Measure E will prohibit PHLF from bidding for or accepting significant volumes of waste from out-of-county sources and will undermine the Consent Judgment's purpose of ensuring competition in the region. Enforcement of Measure E would impair interstate commerce and lead to the substantial lessening of competition, contrary to the Clayton Antitrust Act and the Consent Judgment entered in settlement of the recent

1   antitrust litigation thereunder.

2   49. Waste Connections' operations play a central role in improving the
3   environments of the twenty-six states in which it operates, and it has invested millions of dollars
4   on waste infrastructure and management improvements related to its operations.  For example,
5   Waste Connections paid an aggregate cash purchase price of $57,500,000 for PHLF, plus
6   $1,423,966 in estimated working capital (subject to post-closing pro-rations and other
7   adjustments).  Waste Connections' successful operation of PHLF is dependent upon the
8   substantial revenues generated by the disposal of out-of-county waste, which constitutes
9   approximately 66% percent of the waste disposed at PHLF.  The threatened enforcement of
10  Measure E calls into question Waste Connections' ability to finance operations at PHLF and
11  thereby impairs Waste Connections' ability to perform effective and efficient waste management
12  operations.

13  50. Enforcement of Measure E would deprive Plaintiff BLT of a desirable
14  alternate disposal site for waste collected at its Sacramento transfer station and would reduce
15  competition for the Lockwood Landfill in Nevada, potentially allowing Lockwood to increase
16  the rates it charges BLT and other customers.  Likewise, Plaintiff Concord Disposal Service
17  would lose the ability to rely on PHLF – one of the closest and most convenient disposal
18  facilities in the region – to accept waste collected from the nearby City of Concord.  Finally,
19  Plaintiff El Dorado Disposal Service would be forced to incur increased operating costs if denied
20  access to PHLF, further impairing the competitive pricing of a clearly interstate industry.

21  51. Enforcement of Measure E would cause all of the additional Plaintiffs
22  which provide solid waste collection, transfer and recycling services throughout Northern
23  California, hardship and injury similar to those described above.  Restrictions on access to
24  PHLF, one of the region's most convenient and cost effective disposal facilities, would subject
25  Plaintiffs to increased operating costs and losses in the ability to compete for the waste service
26  contracts that are vital to sustained participation in the industry.

27  52. Enforcement of Measure E would essentially void long-standing disposal
28  contracts on which PHLF and its customers such as Plaintiffs have come to rely; disruption of

disposal contracts will also affect underlying collection and transfer contracts, which were entered into in reliance on pre-negotiated disposal prices with PHLF.

### C. Measure E

53. Voters in Solano County passed Measure E by ballot initiative on November 6, 1984. As a ballot initiative, the Measure did not undergo any reasoned legislative determination or rational review of fact finding regarding the established science and practice of landfill disposal. Instead, the Measure is the product of emotional bias, ungrounded fear, and local protectionism. Measure E expressly and intentionally discriminates against out-of-county waste.

54. Measure E purports to ban the importation and disposal of more than 95,000 tons per year of solid waste generated outside of Solano County. Section 2 of Measure E states that "The County of Solano shall not create a policy, adopt a resolution or ordinance, enter into a contract or in any manner allow for the importation of any solid waste . . . which originated or was collected outside the territorial limits of Solano County which will bring the cumulative total amount of such imported solid waste in excess of 95,000 tons per year." *See* Measure E, an "Initiative Ordinance to Protect Solano County's Environment from Excessive Importation of Solid Waste," attached hereto as Exhibit A and incorporated herein by this reference.

55. Municipal solid wastes are articles in interstate commerce that Measure E illegally excludes from Solano County. Indeed, the U.S. waste services industry, in which Plaintiffs are important players, is a $55 billion industry. Local restrictions on the free movement and trade of municipal solid waste results in a myriad of burdens and negative effects on interstate commerce, including increased operating costs to the industry, higher prices to customers engaged in interstate commerce, loss of jobs and tax revenue, and regional interference with efficient waste management.

56. State and federal regulations governing landfills demonstrate that there are valid, nondiscriminatory alternatives to Measure E that adequately protect the environment. Environmental concerns such as protecting groundwater are of national interest, and have been

1  and continue to be addressed by federal regulations under Subtitle D of RCRA, the California
2  Public Resources Code, and regulations promulgated by the California Integrated Waste
3  Management Board.  Therefore, Measure E imposes a burden on commerce clearly excessive in
4  relation to its illusory local benefits.

5  57.  Solano County has not enforced Measure E, and in July 1992, County
6  officials correctly determined that Measure E was unconstitutional in light of recent decisions by
7  the U.S. Supreme Court.  Soon after the determination by Solano County officials that Measure
8  E is unconstitutional, the Legislative Counsel of California issued a separate legal opinion in
9  August 1992 concluding that Measure E is "protectionist and impermissibly discriminatory
10 against interstate commerce" under legal precedent.

11 58.  Despite the legal analyses to the contrary, Solano County is facing three
12 lawsuits which seek to compel immediate enforcement of Measure E's import ban.  NCRA filed
13 the first of these suits on June 10, 2009, and SPRAWLDEF filed the second on June 12, 2009.
14 These are the same parties that leading the CEQA litigation that has delayed PHLF's expansion
15 permit approval process for the past seven years.  On August 10, 2009, the Sierra Club filed a
16 third state suit against Solano County seeking writs of mandate and declaratory relief to compel
17 the County to enforce Measure E, as well as a temporary restraining order and preliminary and
18 permanent injunctions to restrain the County from taking any action that would cause or allow
19 importation of more than 95,000 tons of solid waste per year into Solano County from other
20 jurisdictions.  All three lawsuits were filed in the Solano County Superior Court.

21 59.  The lawsuits filed in Solano County Superior Court to compel Defendant's
22 enforcement of the unconstitutional Measure E present a significant threat of imminent injury to
23 Plaintiffs' waste management operations.  Without a judicial declaration that Measure E is
24 unconstitutional, Defendant will be compelled to enforce the waste import restrictions.  This
25 threat of enforcement causes an immediate disruption to Plaintiffs' business operations.

26 60.  Enforcement of Measure E will discriminate against and burden the
27 commerce in solid waste, an article that moves and is traded in interstate commerce.  The loss of
28 landfill capacity in Solano County will have significant negative impacts on the Bay Area, the

state of California, and neighboring states. Measure E enforcement would interfere with the solid waste market that allows municipal generators, managers, transporters, including all of the Plaintiffs, to trade millions of dollars worth of goods and services to achieve the nationally important objective of efficient and lawful solid waste management. The regional loss of landfill capacity caused by Measure E will impose great economic and environmental costs upon the waste generating communities that rely on PHLF to absorb a portion of their wastes. Long-term disposal contracts with PHLF and the favorable pricing contained therein will become void, forcing haulers and generators to seek alternative disposal options at likely higher prices; higher disposal prices will, in turn, affect underlying collection and transfer contracts that were entered into in reliance on negotiated disposal prices. As landfill capacities decrease, some counties may be required to transport their waste farther outside of the region, potentially into the neighboring states of Washington, Nevada and Arizona, and perhaps even into Mexico. The burden and effect on interstate commerce will be magnified if additional counties are inspired to adopt similar protectionist bans.

61. Measure E is facially discriminatory, discriminatory in its practical effect, and discriminatory by its purpose. Measure E and the imminent threat of its enforcement causes irreparable harm to Plaintiffs for which there is no adequate remedy at law.

V.  CLAIM FOR RELIEF

(DORMANT COMMERCE CLAUSE; 42 U.S.C. § 1983)

62. Paragraphs Nos. 1 through 61 are incorporated here by reference.

63. The Commerce Clause of the United States Constitution provides that only "[t]he Congress shall have the Power . . . [t]o regulate Commerce . . . among the several States . . . ." Art. I, § 8, cl. 3. Likewise, the Commerce Clause bars state or local governments from unjustifiably discriminating against or burdening the interstate flow of articles in commerce.

64. Municipal solid wastes are articles in commerce subject to the sole power of Congress to regulate commerce among the several states under the Commerce Clause.

65. Measure E, on its face and as applied, prohibits the importation of solid waste into Solano County for disposal in an amount in any year that exceeds 95,000 tons, while

no restriction is placed upon the amount of solid waste generated within the County that may be disposed of in the County. There is no rational basis for treating out-of-county waste differently from in-county waste. Non-local waste is no less safe than is local waste and, indeed, the disposal of such waste in Solano County's available landfill space has increased the public health and welfare of the surrounding counties and California as a whole. This differential treatment of similar waste exposes the unlawful protectionist intent of Measure E.

66. Measure E constitutes an undue burden on interstate commerce, outweighing any illusory, asserted benefits of Measure E, and violates the Commerce Clause.

67. Measure E, on its face and as applied, discriminates against out-of-county and out-of-state solid waste. Such territorial-based discrimination against non-local articles of commerce represents a per se violation of the Commerce Clause.

68. Measure E was drafted with a discriminatory purpose, making the Measure per se invalid.

69. The enactment and the threat of Solano County's imminent enforcement of Measure E violates Plaintiffs' rights under the Commerce Clause of the United States Constitution, and Plaintiffs are entitled to a declaratory judgment thereof and injunctive relief prohibiting Solano County from enforcing Measure E.

70. At all times, Solano County acted under color of state law.

71. The enactment and the threat of Solano County's imminent enforcement of Measure E deprives Plaintiffs of their rights under the Commerce Clause of the United States Constitution, in violation of 42 U.S.C. § 1983.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Pursuant to 28 U.S.C. § 2201, enter a declaratory judgment in Plaintiffs' favor declaring Measure E to be unlawful, ultra vires, arbitrary, unreasonable, and violative of the Plaintiffs' rights under the United States Constitution;

2. Permanently enjoin Defendant, and anyone acting under the authority of or on behalf of Defendant, from enforcing or implementing Measure E;

3. Grant such other and further relief as the Court may deem just and proper.

DATED: September 8, 2009

                              BEVERIDGE & DIAMOND, P.C.


By:_____/s/ Daniel M. Brian_____
        Gary J. Smith (SBN 141393)
        Daniel M. Brian (SBN 262485
        BEVERIDGE & DIAMOND, P.C.
        456 Montgomery Street, Suite 1800
        San Francisco, CA 94104-1251
        Telephone:  (415) 262-4045
        Facsimile:  (415) 262-4040
        Email:  gsmith@bdlaw.com
                dbrian@bdlaw.com

        James B. Slaughter (DC Bar No. 417273
        (Pro Hac Vice admission pending))
        BEVERIDGE & DIAMOND, P.C.
        1350 I Street, N.W., Suite 700
        Washington, D.C.  20005-3311
        Telephone:  (202) 789-6040
        Facsimile:  (202) 789-6190
        Email:  jslaughter@bdlaw.com

# Exhibit A

# Measure E, an "Initiative Ordinance to Protect Solano County's Environment from Excessive Importation of Solid Waste"

## NOTICE OF INTENT TO CIRCULATE PETITION

Notice is hereby given of the intent of the persons whose names appear on this notice to circulate a petition within the County of Solano, State of California. A statement of the reasons of the proposed actions as contemplated in the petition is as follows:

Notice is hereby given of the intent of circulate an initiative petition to protect Solano County's environment from excessive importation of solid waste.

It is critically important to the present and future residents of Solano County that they not be burdened unduly with the increasing volume and variety of solid wastes being generated throughout the state which threaten the public health, safety, and well-being and which contribute to air, waste and land pollution and the general deterioration of the environment.

Making Solano County available for traditional land disposal of solid waste generated outside its jurisdiction without appropriate limitations acts as a disincentive for eliminating environmental pollution and conserving natural resources by such means as resource recovery systems and recycling activities. Solano County has already provided these disincentives by allowing the land disposal of excessive amounts of solid waste, of approximately 500,000 tons per year for a five year period, from San Francisco. The proposed ordinance does not address itself to the category of hazardous waste and its distinct set of laws and regulations.

In order to carry out these general purposes, the initiative proposes an *ordinance* which will:

1. Limit the total amount of solid waste imported into Solano County to a maximum of 95,000 tons per year, excepting the existing contract between the City and County of San Francisco and Solano County allowing importation of garbage during the years 1988-1993.

2. Limit any contract for the importation of solid waste to a total time span of ten years.

GARY J. FALATI
ROGER G. DEANE
JOAN DAWSON
LEE STURN
JAMES W. CHADBOURNE, JR.
March 1, 1984

---

### THE PEOPLE OF THE COUNTY OF SOLANO DO ORDAIN AS FOLLOWS:

**Section 1: Purposes and Findings**

The People of Solano County hereby find as follows:

A. It is critically important to the present and future residents of Solano County that they not be burdened unduly with the increasing volume and variety of solid wastes being generated throughout the state which threaten the public health, safety, and well-being and which contribute to air, water, and land pollution and the general deterioration of the environment.

B. Making Solano County available for traditional land disposal of solid and liquid waste generated outside its jurisdiction without appropriate limitations acts as a disincentive for eliminating environmental pollution and conserving natural resources by such means as resource recovery systems and recycling activities.

C. The policies of this ordinance will protect the public health and welfare by avoiding air, water and land pollution from increased importation of solid waste to Solano County for traditional landfill disposal.

D. Methods of solid waste management emphasizing source reduction, recovery, conversion, and recycling of all solid wastes are essential to the long-range preservation of the health, safety, and well-being of the public, to the County's economic productivity and environmental quality of the state and to the conservation of the state's remaining natural resources.

**Section 2: Limitation on the Importation of Solid Waste**

The County of Solano shall not create a policy, adopt a resolution or ordinance, enter into a contract or in any manner allow for the importation of any solid waste as defined in Section 3 which originated or was collected outside the territorial limits of Solano County which will bring the cumulative total amount of such imported solid waste in excess of 95,000 tons per year.

Any contract entered into by the County of Solano for the importation of any solid waste as defined in Section 3 shall be limited to a total time span of ten years and may be extended or renewed only in accordance with the provisions of Section 4 of this ordinance.

This ordinance shall not limit the discretion of the County of Solano to adopt and enforce regulations for the disposal and handling of less than 95,000 tons of solid waste as defined in Section 3 generated outside of the County of Solano or any solid waste generated inside the County. Furthermore, this ordinance shall not affect the existing contract entered into between the City and County of San Francisco and Solano County allowing importation of garbage during the years 1988-1993.

**Section 3: Definition of Solid Waste**

For purposes of this ordinance, "solid waste" means all putrescible and nonputrescible solid, semisolid, and liquid wastes, including garbage, trash, refuse, paper, rubbish, ashes, industrial wastes, demolition and construction wastes, abandoned vehicles and parts thereof, discarded home and industrial appliances, manure, vegetable or animal solid and semisolid wastes, and other discarded solid and semisolid waste. "Solid Waste" as used in this ordinance shall not include hazardous waste.

Hazardous Waste means a waste, or combination of wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may either:

(a) Cause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness;

(b) Pose a substantial present or potential hazard to human health or environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

**Section 4: Increases in Amount and Duration of Contracts**

The cumulative total amount of solid waste authorized by this ordinance for import into the County of Solano or the ten year limitation upon such contracts for importation shall not be amended without approval by a majority of the people voting in a county-wide election.

**Section 5: Severability**

If any portion of this ordinance is declared invalid, the remaining portions are to be considered valid.

PLAINTIFFS_0080