UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POTRERO HILLS LANDFILL, INC., BLT ENTERPRISES OF SACRAMENTO, INC., BRENTWOOD DISPOSAL SERVICE, INC., CONCORD DISPOSAL SERVICE, INC., CONTRA COSTA WASTE SERVICE, INC., DISCOVERY BAY DISPOSAL INC., NOVATO DISPOSAL SERVICE, INC., OAKLEY DISPOSAL SERVICE, INC., PACIFIC COAST DISPOSAL CORPORATION, PITTSBURG DISPOSAL AND DEBRIS BOX SERVICE, INC., REDWOOD EMPIRE DISPOSAL, INC., RIO VISTA SANITATION SERVICE, INC., ROHNERT PARK DISPOSAL, INC., SANTA ROSA RECYCLING AND COLLECTION INC., SUNRISE GARBAGE SERVICE, INC., TIMBER COVE RECYCLING, INC., TRASHPROS, LLC, WASTE CONNECTIONS, INC., WASTE CONNECTION OF CALIFORNIA, INC., WEST COAST RECYCLING AND TRANSFER INC., WEST SONOMA COUNTY DISPOSAL SERVICE, INC., WEST SONOMA COUNTY TRANSFER, INC., and WINDSOR REFUSE AND RECYCLING, INC., <br><br>        Plaintiffs, <br><br>  v. <br><br>COUNTY OF SOLANO, <br><br>        Defendant. | Case No. 2:09-CIV-02514 JAM-JFM <br><br> ORDER GRANTING INTERVENORS' MOTIONS TO DISMISS |

1

```
 1  SUSTAINABILITY, PARKS, RECYCLING )
    AND WILDLIFE LEGAL DEFENSE FUND, )
 2  SIERRA CLUB, and NORTHERN        )
    CALIFORNIA RECYCLING             )
 3  ASSOCIATION,                     )
                                     )
 4                  Intervenors.     )
```

This matter comes before the Court on remand from the Ninth Circuit Court of Appeals, with a mandate to consider the grounds for dismissal of Plaintiffs Potrero Hills Landfill, et al.'s First Amended Complaint ("FAC")(Doc. #17), other than Younger abstention, presented by Intervenors Sustainability, Parks, Recycling and Wildlife Legal Defense Fund ("SPRAWLDEF"), Sierra Club, and Northern California Recycling Association ("NCRA"). See Potrero Hills Landfill, Inc. v. City of Solano, 657 F.3d 876, 879, 890 (9th Cir. 2011) (hereinafter "PHLI").

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts and procedural history leading up to the filing of the pending case were aptly summarized by the Ninth Circuit, and need not be repeated here. See PHLI, 657 F.3d at 879-881. However, the developments in the concurrent state court cases, now consolidated on appeal to the First District Court of Appeals, are relevant to the Court's inquiry and therefore summarized below.

In May 2010, the Solano County Superior Court issued a written opinion regarding the constitutionality of Measure E. Doc. #67 at 3; see also Doc. #67, Exhibit A. The state court upheld Measure E, in part, by applying California law to judicially reform the challenged Measure. In doing so, the court found that Measure E would not offend the federal Commerce Clause, as it would apply

2

only to waste generated within other counties in California, and it issued a writ of mandamus, directing Defendant Solano County to enforce the measure only against waste produced within California. Id.  The state court also denied Intervenors' request to overturn a landfill expansion permit approved by the court in June 2009 and subsequently rejected Intervenors' motions to reconsider. Several Plaintiffs, Defendant, and Intervenors appealed the rulings, which were consolidated on appeal.  Id.  Their petitions are currently pending before the First District Court of Appeals, and no date for oral argument has been set.

## II.  OPINION

Currently pending before this Court are two motions to dismiss Plaintiffs' FAC, filed by Intervenors SPRAWLDEF (Doc. #31) and Sierra Club and NCRA (Doc. #34), respectively, which Plaintiffs and Defendant oppose.  See Doc. ##42, 43.  Following the Ninth Circuit's opinion, and an order by this Court, the parties filed supplemental briefing on the issues raised by the original motions to dismiss.  See Doc. ##69, 70, 72, 73, 75.  This Court heard argument on the submitted motions to dismiss, and supplemental briefing, on January 11, 2012.  At the conclusion of the hearing, the Court ordered further supplemental briefing on the Colorado River abstention doctrine, as well as dismissal pursuant to the Declaratory Relief Act.  These issues were fully briefed and submitted by the parties on February 3, 2012.  See Doc. ##85-90.

Through its mandate, the Ninth Circuit directed this Court to consider Intervenors' alternative grounds for dismissal, including the applicability of the Pullman abstention doctrine, R.R. Comm'n

3

of Tex. v. Pullman Co., 312 U.S. 496 (1941), "in the first instance." See PHLI, 657 F.3d at 890.  It is important to note, at the outset, that a Court has discretion to choose among threshold jurisdictional issues.  See, e.g., Sinochem International Co., LTD v. Malaysia International Shipping Corp., 549 U.S. 422, 430-431 (2007).  However, unlike Younger, abstention under Pullman requires a federal court to retain jurisdiction by staying the action where abstention is appropriate.  See id.; accord Pullman, 312 U.S. 496. Indeed, Pullman abstention has not been found to be one of the "threshold grounds for denying audience to a case on the merits," Sinochem International, 549 U.S. at 431 (citations omitted), as it "does not implicate [a federal court's] subject matter jurisdiction. . . ." Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 802 (9th Cir. 2001).

    Importantly, the Supreme Court has made clear that a federal district court cannot "assume jurisdiction," in order to address a "merits question."  Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 93-96 (1998).  In this case, it is necessary to first address the arguments for dismissal presented by Intervenors relating to Plaintiffs' Article III standing, ripeness and prudential standing.  As further described below, because this Court finds that Plaintiffs have not properly alleged standing or ripeness in the FAC, this Court is precluded from addressing Pullman "in the first instance." See City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 232 (9th Cir. 1980) ("[W]e find that standing must be ascertained before a court proceeds to exercise its discretion to abstain [under Pullman]."); Miller-Davis Company v. Illinois State Toll Highway

Authority, 567 F.2d 323, 325-26 (7th Cir. 1977) (finding a district court erred in abstaining under Pullman before it "resolved any problems as to its jurisdiction").

Intervenors move to dismiss Plaintiffs' FAC under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs have failed to plead they have standing under Article III to maintain their section 1983 claim, that Plaintiffs' claim fails because it is not ripe for judicial review, and that Plaintiffs lack prudential standing to bring the present lawsuit. See Doc. ##34, 47. The Court will address each of these jurisdictional arguments in turn.

A. Article III Standing

A court may dismiss an action under Rule 12(b)(1) "when the District Court lacks subject matter jurisdiction over the claim." FED. R. CIV. P. 12(b)(1). A motion made pursuant to Rule 12(b)(1) "may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Because challenges to standing implicate a federal court's subject matter jurisdiction . . . they are properly raised in a [12(b)(1)] motion to dismiss." Meaunrit v. ConAgra Foods Inc., 2010 WL 2867393, *3 (N.D. Cal. July 20, 2010) (internal citations omitted). Additionally, under Rule 12(b)(1), a court may dismiss a claim that is unripe for review. Carson Harbor Village, Ltd. V. City of Carson, 353 F.3d 824, 825 & n.3 (9th Cir. 2004).

The United States Constitution limits the judicial authority of federal courts to cases and controversies. U.S. CONST. ART. III, § 2. A court will not have subject matter jurisdiction over an action unless a live case or controversy exists, United States

1  Nat'l Bank of Or. v. Independent Ins. Agents of Am., 508 U.S. 439
2  (1993), and Article III requires that a plaintiff have standing
3  throughout litigation.  See Flast v. Cohen, 392 U.S. 83, 97 (1968).
4  If subject matter jurisdiction is lacking "at any time . . ., the
5  court must dismiss the action."  FED. R. CIV. P. 12(h)(3).
6       The party invoking federal jurisdiction has the burden of
7  establishing the elements of standing, which are: (1) injury in
8  fact; (2) causal connection between injury and conduct complained
9  of; and (3) redressability.  Lujan v. Defenders of Wildlife, 504
10 U.S. 555, 560-61 (1992).
11      Intervenors challenge only the injury in fact element, arguing
12 that as pled, Plaintiffs have failed to demonstrate an injury that
13 is not speculative.  Doc. #34 at 7-8.  Intervenors contend that the
14 FAC lacks allegations that Measure E is being enforced, or that
15 there is a genuine threat of enforcement.  Id.  To demonstrate an
16 injury in fact, sufficient to maintain standing in this case,
17 Plaintiffs must have suffered "an invasion of a legally protected
18 interest which is (a) concrete and particularized, [] and (b)
19 actual or imminent, not conjectural or hypothetical."  Lujan, 504
20 U.S. at 560 (quotations and citations omitted).
21      While Plaintiffs are correct, that "[they] don't have to wait
22 until the sheriff comes and puts a padlock on Potrero Hills
23 Landfill," Hearing Transcript, Doc. #84 at pg. 13:22-24, they are
24 required to demonstrate that there is some genuine threat of
25 enforcement, raising the potential injury in this case beyond the
26 speculative level.  See Lujan, 504 U.S. at 564, fn.2 (requiring any
27 alleged future injury to be "certainly impending"); Mortensen v.
28 County of Sacramento, 368 F.3d 1082 (9th Cir. 2004).  Paragraph 3

of Plaintiffs' FAC exemplifies the speculative nature of their alleged injuries in this case: "[U]nless Measure E is declared to be unlawful, Defendant [] will be compelled to enforce Measure E, thereby causing Plaintiffs substantial injury." (Doc. #17). Throughout the rest of the FAC, Plaintiffs discuss possible injuries they may suffer if Measure E is enforced. See FAC at ¶¶ 6, 7, 10, 51-56, 61-64 (suggesting what "will" or "would" happen). However, there are no facts pled substantiating Plaintiffs' claim that there is truly an imminent threat of enforcement, and the length of this case, coupled with the ongoing state court litigation, further demonstrate that there is little or no real threat of enforcement, let alone an imminent threat. Accord See Gospel Missions of Am. v. City of L.A., 328 F.3d 548, 555 (9th Cir. 2003) (religious nonprofit lacked standing to challenge local ordinance because allegations raised only mere possibility of future injury); San Diego County Gun Rights Com'n v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996).

　　　As Intervenors argued, and was discussed at the hearing, any potential harm to Plaintiffs is twice removed – first, there must be a finding that Measure E is constitutional and enforceable, then there must be steps taken to actually enforce the statute against Plaintiffs.  The attenuated nature of the threat as pled in the FAC also confirms Intervenors' argument that any harm in this case is purely speculative. See Lujan, 504 U.S. at 564; City of Los Angeles v. Lyons, 461 U.S. 95 (1983) (holding the plaintiff failed to demonstrate a "real and immediate threat" of future injury where potential harm was twice removed, in that the plaintiff would have to be arrested again, then subject to another allegedly unlawful

1 | chokehold).

2 | There is one paragraph in the FAC where Plaintiffs suggest
3 | they are presently suffering an injury, in that the threat of
4 | enforcement has caused "immediate disruption to Plaintiffs'
5 | business operations." FAC at ¶ 63. However, this alleged harm
6 | does not meet Iqbal's plausibility standard, as there are no facts
7 | in the complaint substantiating any harm presently suffered by
8 | Plaintiffs. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)
9 | (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)
10 | (assertions that are mere "legal conclusions" are not entitled to
11 | the assumption of truth). Accordingly, Plaintiffs cannot rely on
12 | this one conclusory allegation to establish that a live case or
13 | controversy exists.

14 | Turning to Intervenor Sierra Club's argument that this case
15 | lacks the requisite adversity to satisfy Article III, Sierra Club
16 | contends that the proceeding is a "friendly lawsuit" in which
17 | Plaintiffs and Defendant desire the same outcome and are in a
18 | collusive relationship. Plaintiffs refute this argument, relying
19 | on INS v. Chadha, 462 U.S. 919 (1983) to support their position
20 | that the necessary adversity exists and that sufficient injury has
21 | been pled. Having reviewed each of the four cases relied upon by
22 | Sierra Club to support its argument, the Court finds that all of
23 | the cases are readily distinguishable from the case at bar.
24 | Compare, e.g., U.S. v. Johnson, 319 U.S. 302 (1943) (finding there
25 | was no case or controversy because, *inter alia*, the plaintiff was
26 | "nominally" represented by counsel selected by an allegedly
27 | adversarial party). There is no evidence in this case that a
28 | collusive relationship exists between Plaintiffs and Defendant, nor

1 is there an absence of a genuine adversary issue between the
2 parties that would require dismissal.  Compare id.
3     While the Court finds that this is not a "friendly lawsuit",
4 nevertheless, it also finds that Plaintiffs' reliance on Chadha is
5 misplaced.  Compare Chadha, 462 U.S. 919 (1983).  Unlike this case,
6 the plaintiff there was facing direct, imminent harm, in the form
7 of deportation, as a result of the active enforcement of a statute
8 he was challenging as unconstitutional; therefore, Chadha is
9 inapposite.  Id. at 935-36.  Additionally, in Chadha the Court
10 found that the necessary adversity existed prior to any
11 intervention.  Id. at 939-40.  Thus, the Court finds that while
12 there is not a collusive relationship between the Plaintiffs and
13 Defendant impeding Article III jurisdiction, Plaintiffs lack
14 standing under Article III because they have failed to sufficiently
15 allege injury in fact.
16     At oral argument, Plaintiffs asserted that if granted leave to
17 amend, they could add allegations regarding difficulties
18 negotiating contracts and other business dealings to offer greater
19 detail on the precise harms that they are presently suffering as a
20 result of concerns over potential future enforcement of Measure E.
21 Hearing Transcript, Doc. #84 at pgs. 11-12:9-13. In light of these
22 representations to the Court, Plaintiffs will be given leave to
23 amend the FAC and a final opportunity to adequately allege
24 standing.
25     B.   Ripeness
26     In addition to challenging standing, Intervenors argue that
27 the present case is not ripe for decision at this time, because
28 there is no immediate threat that Measure E will be enforced.

1 | Plaintiffs contend that the case is ripe because there is a threat
2 | of enforcement and the Court need not wait for it to mature into
3 | what would become a significant business injury.  Plaintiffs rely
4 | on In re Coleman, 560 F.3d 1000 (9th Cir. 2009), for the
5 | proposition that if the facts alleged show there is a substantial
6 | controversy between parties having adverse legal interests, of
7 | sufficient immediacy and reality, the case is ripe and warrants the
8 | issuance of a declaratory judgment.
9 |     Ripeness has both constitutional and prudential components.
10 | See, e.g., In re Coleman, 560 F.3d 1000, 1004 (9th Cir. 2009).  The
11 | question of ripeness goes to whether this court has subject matter
12 | jurisdiction.  Southern Pac. Transp. Co. v. Los Angeles, 922 F.2d
13 | 498, 502 (9th Cir. 1990).  Ripeness addresses when a suit should be
14 | brought, where standing addresses who may bring a suit; however,
15 | the two doctrines are related.  See Colwell v. HHS, 558 F.3d 1112,
16 | 1123 (9th Cir. 2009).  Indeed, in many cases, ripeness "coincides
17 | squarely with standing's injury in fact prong and can be
18 | characterized as standing on a timeline."  Stormans, Inc. v.
19 | Selecky, 586 F.3d 1109, 1122 (9th Cir. 2009); see also Bova v. City
20 | of Medford, 564 F.3d 1093, 1096-97 (9th Cir. 2009).
21 |     A court's role is "neither to issue advisory opinions nor to
22 | declare rights in hypothetical cases, but to adjudicate live cases
23 | or controversies consistent with the powers granted [by the]
24 | Constitution."  Stormans, 564 F.3d at 1123.  For the same reasons
25 | Plaintiffs have failed to allege Article III standing, their claims
26 | in this case are not ripe.  See Thomas v. Union Carbide Agric.
27 | Prod., Co., 473 U.S. 568, 580-81 (courts should refrain from
28 | deciding cases that "involve contingent future events that may not

occur as anticipated, or indeed may not occur at all.")

While Plaintiffs are correct that a case may be constitutionally ripe for a declaratory judgment when the facts alleged show a controversy of sufficient immediacy and reality, and prudentially ripe when the issues are fit for decision and there is hardship to the parties of withholding decision, see In re Coleman, 560 F.3d at 1004-1007, here the Plaintiffs are asking this Court to declare rights in a hypothetical case.  Indeed, Plaintiffs are speculating about harm they might suffer if Measure E is enforced, and asking this Court to declare the measure unconstitutional, when there is no real threat of immediate enforcement.  Bova v. City of Medford, 564 F.3d 1093, 1096-97 (9th Cir. 2009); accord Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by California v. Sanders, 430 U.S. 99 (1997).  The allegations of the FAC do not sufficiently allege enforcement, or a genuine threat of enforcement, to make this case ripe.  See FAC at ¶¶ 3, 6, 7, 10, 51-56, 61-64.  Nor have Plaintiffs sufficiently alleged the hardship they will suffer from the withholding of judicial review by this Court.  See FAC.  The mere fact that Intervenors have initiated mandamus litigation against Plaintiffs in state court is not sufficient for this Court to find that a genuine threat of enforcement exists at this time.  See, e.g., Bova, 564 F.3d 1093.  First, Plaintiffs may be successful in defeating Intervenors' mandamus actions, and second, the party charged with enforcing Measure E, i.e. the County, has given no indication to this Court or to Plaintiffs that it intends to proceed with its enforcement responsibilities under Measure E.  Thus, it is clear that Plaintiffs' claim is premature.

For these reasons, Plaintiffs' challenge to Measure E is not ripe and must be dismissed. As with standing, the Court cannot say with certainty at this time that any further amendment would be futile. Accordingly, the Court will grant leave to amend.

### C. Prudential Standing

At the hearing and in their briefs, Intervenors argued that Plaintiffs lack prudential standing to maintain the instant action. Specifically, Intervenors contend that even with the addition of two out-of-state plaintiffs who allegedly haul waste to the Potrero Hills Landfill, the allegations of the FAC are insufficient to establish prudential standing, which Plaintiffs contested at the hearing. Intervenor SPRAWLDEF countered that if there is further factual support for Plaintiffs' conclusory allegations to establish prudential standing, then Plaintiffs should amend the FAC to include this concrete factual support. Hearing Transcript, Doc. #84 at pgs. 31-32:16-13. Sierra Club, on the other hand, asserted that any amendment would be futile, because no party could, in good faith, allege that Measure E is, or should be, enforced against out-of-state waste. Without a showing that Measure E applies to in-state commerce, no out-of-state plaintiffs could show any injury. Hearing Transcript, Doc. #84 at pgs. 32-33:16-6.

Separate from Article III standing requirements are "judicially self-imposed limits on the exercise of federal jurisdiction, founded in concern about the proper - and properly limited – role of the courts in a democratic society . . . commonly referred to as prudential standing." City of Los Angeles v. County of Kern, 581 F.3d 841, 845 (9th Cir. 2009). There are three prudential concerns: (1) whether a plaintiff's alleged injury falls

within the "zone of interests" protected by statute or constitutional provision at issue; (2) whether the complaint raises nothing more than abstract questions, amounting to generalized grievances; and (3) whether the plaintiff is asserting his or her own legal rights and interests, rather than those of third parties. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75 (1982).

Only the first prudential doctrine is at issue in this case, as it commonly governs claims "under the negative [] Commerce Clause . . . ." Kern, 581 F.3d at 846. The "zone of interest" test is not met if a plaintiff's interests are marginally related to, or inconsistent with, the purposes implicit in the relevant constitutional provision. Kern, 581 F.3d at 847. The Ninth Circuit has recently reiterated that "[f]inancial injury, standing alone, does not implicate the zone of interests protected by the dormant Commerce Clause. That financial injury must somehow be tied to a barrier imposed on interstate commerce." Id. at 848.

The Court agrees with Intervenors that Kern is almost identical to the case at bar, and therefore dispositive. Indeed, like the plaintiffs in Kern, these Plaintiffs have failed to demonstrate that their interest is "somehow [] tied to a barrier imposed on interstate commerce." Id. The fact that there are two named out-of-state plaintiffs who are alleged to haul waste to Potrero Hills Landfill does not change this Court's conclusion, since there are no allegations in the FAC substantiating any of Plaintiffs' claims regarding Measure E's application to the out-of-state parties or any effect of Measure E that is not financial. Compare Individuals for Responsible Government, Inc. v. Washoe

13

County, 110 F.3d 699 (9th Cir. 1997); accord Kern, 581 F.3d at 846-48.

Accordingly, the allegations of the FAC are insufficient to show how the injury to Plaintiffs goes beyond mere financial injury and meets the "zone of interest" test by burdening interstate commerce. While, as discussed at the hearing, it is speculative that Measure E will be ever enforced against out-of-state waste, the Court cannot say with certainty at this stage that amendment would be futile; thus the Court will allow Plaintiffs leave to amend.

D.  Remaining Issues

As discussed above, the Ninth Circuit instructed this Court to consider the parties' additional arguments in support of and in opposition to the motions to dismiss. The parties raised a number of additional arguments which were discussed at length at the hearing and in the briefs, including Pullman abstention, Colorado River abstention, abstention pursuant to the Declaratory Judgment Act, and the validity and timeliness of Plaintiffs' facial challenge and as-applied challenge. These issues remain unaddressed and the Court need not reach them at this time due to its findings that Plaintiffs lack standing and the case is not ripe.

### III. ORDER

For all the foregoing reasons, the Court hereby dismisses Plaintiffs' First Amended Complaint, without prejudice. If Plaintiffs elect to file an amended complaint, this Second Amended Complaint must be filed within twenty (20) days of the date of this

1  Order.  Responsive pleadings will be due within twenty (20) days of
2  the filing of the Second Amended Complaint.
3      IT IS SO ORDERED.
4  Dated: April 12, 2012
5                                      _____
                                       JOHN A. MENDEZ,
                                       UNITED STATES DISTRICT JUDGE