1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   POTRERO HILLS LANDFILL, INC.,      )   Case No. 2:09-CIV-02514 JAM-JFM
     BLT ENTERPRISES OF SACRAMENTO,     )
12   INC., BRENTWOOD DISPOSAL           )
     SERVICE, INC., CONCORD DISPOSAL    )
13   SERVICE, INC., CONTRA COSTA        )
     WASTE SERVICE, INC., DISCOVERY     )   ORDER GRANTING INTERVENORS'
14   BAY DISPOSAL INC., NOVATO          )   MOTIONS TO DISMISS
     DISPOSAL SERVICE, INC., OAKLEY     )
15   DISPOSAL SERVICE, INC., PACIFIC    )
     COAST DISPOSAL CORPORATION,        )
16   PITTSBURG DISPOSAL AND DEBRIS      )
     BOX SERVICE, INC., REDWOOD         )
17   EMPIRE DISPOSAL, INC., RIO VISTA   )
     SANITATION SERVICE, INC.,          )
18   ROHNERT PARK DISPOSAL, INC.,       )
     SANTA ROSA RECYCLING AND           )
19   COLLECTION INC., SUNRISE GARBAGE   )
     SERVICE, INC., TIMBER COVE         )
20   RECYCLING, INC., TRASHPROS, LLC,   )
     WASTE CONNECTIONS, INC., WASTE     )
21   CONNECTION OF CALIFORNIA, INC.,    )
     WEST COAST RECYCLING AND           )
22   TRANSFER INC., WEST SONOMA         )
     COUNTY DISPOSAL SERVICE, INC.,     )
23   WEST SONOMA COUNTY TRANSFER,       )
     INC., and WINDSOR REFUSE AND       )
24   RECYCLING, INC.,                   )
                                        )
25                     Plaintiffs,      )
                                        )
26        v.                            )
                                        )
27   COUNTY OF SOLANO,                  )
                                        )
28                     Defendant.       )

1

1  SUSTAINABILITY, PARKS, RECYCLING )
   AND WILDLIFE LEGAL DEFENSE FUND, )
2  SIERRA CLUB, and NORTHERN        )
   CALIFORNIA RECYCLING            )
3  ASSOCIATION,                     )
                                    )
4  _____Intervenors.___ )

5       This matter comes before the Court on remand from the Ninth

6  Circuit Court of Appeals, with a mandate to consider the grounds

7  for dismissal of Plaintiffs Potrero Hills Landfill, et al.'s First

8  Amended Complaint ("FAC")(Doc. #17), other than <u>Younger</u> abstention,

9  presented by Intervenors Sustainability, Parks, Recycling and

10 Wildlife Legal Defense Fund ("SPRAWLDEF"), Sierra Club, and

11 Northern California Recycling Association ("NCRA").  <u>See</u> <u>Potrero</u>

12 <u>Hills Landfill, Inc. v. City of Solano</u>, 657 F.3d 876, 879, 890 (9th

13 Cir. 2011) (hereinafter "PHLI").

14

15               I.   FACTUAL AND PROCEDURAL BACKGROUND

16      The relevant facts and procedural history leading up to the

17 filing of the pending case were aptly summarized by the Ninth

18 Circuit, and need not be repeated here.  <u>See</u> <u>PHLI</u>, 657 F.3d at 879-

19 881.  However, the developments in the concurrent state court

20 cases, now consolidated on appeal to the First District Court of

21 Appeals, are relevant to the Court's inquiry and therefore

22 summarized below.

23      In May 2010, the Solano County Superior Court issued a written

24 opinion regarding the constitutionality of Measure E.  Doc. #67 at

25 3; <u>see also</u> Doc. #67, Exhibit A.  The state court upheld Measure E,

26 in part, by applying California law to judicially reform the

27 challenged Measure. In doing so, the court found that Measure E

28 would not offend the federal Commerce Clause, as it would apply

2

1   only to waste generated within other counties in California, and it
2   issued a writ of mandamus, directing Defendant Solano County to
3   enforce the measure only against waste produced within California.
4   Id.  The state court also denied Intervenors' request to overturn a
5   landfill expansion permit approved by the court in June 2009 and
6   subsequently rejected Intervenors' motions to reconsider. Several
7   Plaintiffs, Defendant, and Intervenors appealed the rulings, which
8   were consolidated on appeal.   Id.   Their petitions are currently
9   pending before the First District Court of Appeals, and no date for
10  oral argument has been set.

11

12                          II.  OPINION

13       Currently pending before this Court are two motions to dismiss
14  Plaintiffs' FAC, filed by Intervenors SPRAWLDEF (Doc. #31) and
15  Sierra Club and NCRA (Doc. #34), respectively, which Plaintiffs and
16  Defendant oppose.  See Doc. ##42, 43.  Following the Ninth
17  Circuit's opinion, and an order by this Court, the parties filed
18  supplemental briefing on the issues raised by the original motions
19  to dismiss.  See Doc. ##69, 70, 72, 73, 75.  This Court heard
20  argument on the submitted motions to dismiss, and supplemental
21  briefing, on January 11, 2012.  At the conclusion of the hearing,
22  the Court ordered further supplemental briefing on the Colorado
23  River abstention doctrine, as well as dismissal pursuant to the
24  Declaratory Relief Act.  These issues were fully briefed and
25  submitted by the parties on February 3, 2012.  See Doc. ##85-90.

26       Through its mandate, the Ninth Circuit directed this Court to
27  consider Intervenors' alternative grounds for dismissal, including
28  the applicability of the Pullman abstention doctrine, R.R. Comm'n

                                  3

1  of Tex. v. Pullman Co., 312 U.S. 496 (1941), "in the first

2  instance." See PHLI, 657 F.3d at 890.  It is important to note, at

3  the outset, that a Court has discretion to choose among threshold

4  jurisdictional issues.  See, e.g., Sinochem International Co., LTD

5  v. Malaysia International Shipping Corp., 549 U.S. 422, 430-431

6  (2007).  However, unlike Younger, abstention under Pullman requires

7  a federal court to retain jurisdiction by staying the action where

8  abstention is appropriate.  See id.; accord Pullman, 312 U.S. 496.

9  Indeed, Pullman abstention has not been found to be one of the

10 "threshold grounds for denying audience to a case on the merits,"

11 Sinochem International, 549 U.S. at 431 (citations omitted), as it

12 "does not implicate [a federal court's] subject matter

13 jurisdiction. . . ."  Columbia Basin Apartment Ass'n v. City of

14 Pasco, 268 F.3d 791, 802 (9th Cir. 2001).

15      Importantly, the Supreme Court has made clear that a federal

16 district court cannot "assume jurisdiction," in order to address a

17 "merits question."  Steel Company v. Citizens for a Better

18 Environment, 523 U.S. 83, 93-96 (1998).  In this case, it is

19 necessary to first address the arguments for dismissal presented by

20 Intervenors relating to Plaintiffs' Article III standing, ripeness

21 and prudential standing.  As further described below, because this

22 Court finds that Plaintiffs have not properly alleged standing or

23 ripeness in the FAC, this Court is precluded from addressing

24 Pullman "in the first instance."  See City of South Lake Tahoe v.

25 California Tahoe Regional Planning Agency, 625 F.2d 231, 232 (9th

26 Cir. 1980) ("[W]e find that standing must be ascertained before a

27 court proceeds to exercise its discretion to abstain [under

28 Pullman].");  Miller-Davis Company v. Illinois State Toll Highway

1   Authority, 567 F.2d 323, 325-26 (7th Cir. 1977) (finding a district

2   court erred in abstaining under Pullman before it "resolved any

3   problems as to its jurisdiction").

4       Intervenors move to dismiss Plaintiffs' FAC under Federal Rule

5   of Civil Procedure 12(b)(1), arguing that Plaintiffs have failed to

6   plead they have standing under Article III to maintain their

7   section 1983 claim, that Plaintiffs' claim fails because it is not

8   ripe for judicial review, and that Plaintiffs lack prudential

9   standing to bring the present lawsuit.  See Doc. ##34, 47.  The

10  Court will address each of these jurisdictional arguments in turn.

11      A.   Article III Standing

12      A court may dismiss an action under Rule 12(b)(1) "when the

13  District Court lacks subject matter jurisdiction over the claim."

14  FED. R. CIV. P. 12(b)(1).  A motion made pursuant to Rule 12(b)(1)

15  "may either attack the sufficiency of the pleadings to establish

16  federal jurisdiction, or allege an actual lack of jurisdiction

17  which exists despite the formal sufficiency of the complaint.

18  Because challenges to standing implicate a federal court's subject

19  matter jurisdiction . . . they are properly raised in a [12(b)(1)]

20  motion to dismiss."  Meaunrit v. ConAgra Foods Inc., 2010 WL

21  2867393, *3 (N.D. Cal. July 20, 2010) (internal citations omitted).

22  Additionally, under Rule 12(b)(1), a court may dismiss a claim that

23  is unripe for review.  Carson Harbor Village, Ltd. V. City of

24  Carson, 353 F.3d 824, 825 & n.3 (9th Cir. 2004).

25      The United States Constitution limits the judicial authority

26  of federal courts to cases and controversies.  U.S. CONST. ART. III,

27  § 2.  A court will not have subject matter jurisdiction over an

28  action unless a live case or controversy exists, United States

5

1   Nat'l Bank of Or. v. Independent Ins. Agents of Am., 508 U.S. 439

2   (1993), and Article III requires that a plaintiff have standing

3   throughout litigation.  See Flast v. Cohen, 392 U.S. 83, 97 (1968).

4   If subject matter jurisdiction is lacking "at any time . . ., the

5   court must dismiss the action."  FED. R. CIV. P. 12(h)(3).

6       The party invoking federal jurisdiction has the burden of

7   establishing the elements of standing, which are: (1) injury in

8   fact; (2) causal connection between injury and conduct complained

9   of; and (3) redressability.  Lujan v. Defenders of Wildlife, 504

10  U.S. 555, 560-61 (1992).

11      Intervenors challenge only the injury in fact element, arguing

12  that as pled, Plaintiffs have failed to demonstrate an injury that

13  is not speculative.  Doc. #34 at 7-8.  Intervenors contend that the

14  FAC lacks allegations that Measure E is being enforced, or that

15  there is a genuine threat of enforcement.  Id.  To demonstrate an

16  injury in fact, sufficient to maintain standing in this case,

17  Plaintiffs must have suffered "an invasion of a legally protected

18  interest which is (a) concrete and particularized, [] and (b)

19  actual or imminent, not conjectural or hypothetical."  Lujan, 504

20  U.S. at 560 (quotations and citations omitted).

21      While Plaintiffs are correct, that "[they] don't have to wait

22  until the sheriff comes and puts a padlock on Potrero Hills

23  Landfill," Hearing Transcript, Doc. #84 at pg. 13:22-24, they are

24  required to demonstrate that there is some genuine threat of

25  enforcement, raising the potential injury in this case beyond the

26  speculative level.  See Lujan, 504 U.S. at 564, fn.2 (requiring any

27  alleged future injury to be "certainly impending"); Mortensen v.

28  County of Sacramento, 368 F.3d 1082 (9th Cir. 2004).  Paragraph 3

of Plaintiffs' FAC exemplifies the speculative nature of their
alleged injuries in this case: "[U]nless Measure E is declared to
be unlawful, Defendant [] will be compelled to enforce Measure E,
thereby causing Plaintiffs substantial injury."  (Doc. #17).
Throughout the rest of the FAC, Plaintiffs discuss possible
injuries they may suffer if Measure E is enforced.  See FAC at ¶¶
6, 7, 10, 51-56, 61-64 (suggesting what "will" or "would" happen).
However, there are no facts pled substantiating Plaintiffs' claim
that there is truly an imminent threat of enforcement, and the
length of this case, coupled with the ongoing state court
litigation, further demonstrate that there is little or no real
threat of enforcement, let alone an imminent threat.  Accord See
Gospel Missions of Am. v. City of L.A., 328 F.3d 548, 555 (9th Cir.
2003) (religious nonprofit lacked standing to challenge local
ordinance because allegations raised only mere possibility of
future injury); San Diego County Gun Rights Com'n v. Reno, 98 F.3d
1121, 1126 (9th Cir. 1996).

As Intervenors argued, and was discussed at the hearing, any
potential harm to Plaintiffs is twice removed – first, there must
be a finding that Measure E is constitutional and enforceable, then
there must be steps taken to actually enforce the statute against
Plaintiffs.  The attenuated nature of the threat as pled in the FAC
also confirms Intervenors' argument that any harm in this case is
purely speculative.  See Lujan, 504 U.S. at 564; City of Los
Angeles v. Lyons, 461 U.S. 95 (1983) (holding the plaintiff failed
to demonstrate a "real and immediate threat" of future injury where
potential harm was twice removed, in that the plaintiff would have
to be arrested again, then subject to another allegedly unlawful

1   chokehold).

2        There is one paragraph in the FAC where Plaintiffs suggest

3   they are presently suffering an injury, in that the threat of

4   enforcement has caused "immediate disruption to Plaintiffs'

5   business operations."  FAC at ¶ 63.  However, this alleged harm

6   does not meet Iqbal's plausibility standard, as there are no facts

7   in the complaint substantiating any harm presently suffered by

8   Plaintiffs.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

9   (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

10  (assertions that are mere "legal conclusions" are not entitled to

11  the assumption of truth).  Accordingly, Plaintiffs cannot rely on

12  this one conclusory allegation to establish that a live case or

13  controversy exists.

14       Turning to Intervenor Sierra Club's argument that this case

15  lacks the requisite adversity to satisfy Article III, Sierra Club

16  contends that the proceeding is a "friendly lawsuit" in which

17  Plaintiffs and Defendant desire the same outcome and are in a

18  collusive relationship.  Plaintiffs refute this argument, relying

19  on INS v. Chadha, 462 U.S. 919 (1983) to support their position

20  that the necessary adversity exists and that sufficient injury has

21  been pled.  Having reviewed each of the four cases relied upon by

22  Sierra Club to support its argument, the Court finds that all of

23  the cases are readily distinguishable from the case at bar.

24  Compare, e.g., U.S. v. Johnson, 319 U.S. 302 (1943) (finding there

25  was no case or controversy because, inter alia, the plaintiff was

26  "nominally" represented by counsel selected by an allegedly

27  adversarial party).  There is no evidence in this case that a

28  collusive relationship exists between Plaintiffs and Defendant, nor

1  is there an absence of a genuine adversary issue between the

2  parties that would require dismissal.  Compare id.

3       While the Court finds that this is not a "friendly lawsuit",

4  nevertheless, it also finds that Plaintiffs' reliance on Chadha is

5  misplaced.  Compare Chadha, 462 U.S. 919 (1983).  Unlike this case,

6  the plaintiff there was facing direct, imminent harm, in the form

7  of deportation, as a result of the active enforcement of a statute

8  he was challenging as unconstitutional; therefore, Chadha is

9  inapposite.  Id. at 935-36.  Additionally, in Chadha the Court

10 found that the necessary adversity existed prior to any

11 intervention.  Id. at 939-40.  Thus, the Court finds that while

12 there is not a collusive relationship between the Plaintiffs and

13 Defendant impeding Article III jurisdiction, Plaintiffs lack

14 standing under Article III because they have failed to sufficiently

15 allege injury in fact.

16      At oral argument, Plaintiffs asserted that if granted leave to

17 amend, they could add allegations regarding difficulties

18 negotiating contracts and other business dealings to offer greater

19 detail on the precise harms that they are presently suffering as a

20 result of concerns over potential future enforcement of Measure E.

21 Hearing Transcript, Doc. #84 at pgs. 11-12:9-13. In light of these

22 representations to the Court, Plaintiffs will be given leave to

23 amend the FAC and a final opportunity to adequately allege

24 standing.

25      B.   Ripeness

26      In addition to challenging standing, Intervenors argue that

27 the present case is not ripe for decision at this time, because

28 there is no immediate threat that Measure E will be enforced.

1   Plaintiffs contend that the case is ripe because there is a threat

2   of enforcement and the Court need not wait for it to mature into

3   what would become a significant business injury.  Plaintiffs rely

4   on In re Coleman, 560 F.3d 1000 (9th Cir. 2009), for the

5   proposition that if the facts alleged show there is a substantial

6   controversy between parties having adverse legal interests, of

7   sufficient immediacy and reality, the case is ripe and warrants the

8   issuance of a declaratory judgment.

9       Ripeness has both constitutional and prudential components.

10  See, e.g., In re Coleman, 560 F.3d 1000, 1004 (9th Cir. 2009).  The

11  question of ripeness goes to whether this court has subject matter

12  jurisdiction.  Southern Pac. Transp. Co. v. Los Angeles, 922 F.2d

13  498, 502 (9th Cir. 1990).  Ripeness addresses when a suit should be

14  brought, where standing addresses who may bring a suit; however,

15  the two doctrines are related.  See Colwell v. HHS, 558 F.3d 1112,

16  1123 (9th Cir. 2009).  Indeed, in many cases, ripeness "coincides

17  squarely with standing's injury in fact prong and can be

18  characterized as standing on a timeline." Stormans, Inc. v.

19  Selecky, 586 F.3d 1109, 1122 (9th Cir. 2009); see also Bova v. City

20  of Medford, 564 F.3d 1093, 1096-97 (9th Cir. 2009).

21      A court's role is "neither to issue advisory opinions nor to

22  declare rights in hypothetical cases, but to adjudicate live cases

23  or controversies consistent with the powers granted [by the]

24  Constitution." Stormans, 564 F.3d at 1123.  For the same reasons

25  Plaintiffs have failed to allege Article III standing, their claims

26  in this case are not ripe.  See Thomas v. Union Carbide Agric.

27  Prod., Co., 473 U.S. 568, 580-81 (courts should refrain from

28  deciding cases that "involve contingent future events that may not

10

1  occur as anticipated, or indeed may not occur at all.")

2      While Plaintiffs are correct that a case may be

3  constitutionally ripe for a declaratory judgment when the facts

4  alleged show a controversy of sufficient immediacy and reality, and

5  prudentially ripe when the issues are fit for decision and there is

6  hardship to the parties of withholding decision, see In re Coleman,

7  560 F.3d at 1004-1007, here the Plaintiffs are asking this Court to

8  declare rights in a hypothetical case.  Indeed, Plaintiffs are

9  speculating about harm they might suffer if Measure E is enforced,

10 and asking this Court to declare the measure unconstitutional, when

11 there is no real threat of immediate enforcement.  Bova v. City of

12 Medford, 564 F.3d 1093, 1096-97 (9th Cir. 2009); accord Abbott

13 Laboratories v. Gardner, 387 U.S. 136, 148 (1967), overruled on

14 other grounds by California v. Sanders, 430 U.S. 99 (1997).  The

15 allegations of the FAC do not sufficiently allege enforcement, or a

16 genuine threat of enforcement, to make this case ripe.  See FAC at

17 ¶¶ 3, 6, 7, 10, 51-56, 61-64.  Nor have Plaintiffs sufficiently

18 alleged the hardship they will suffer from the withholding of

19 judicial review by this Court.  See FAC.  The mere fact that

20 Intervenors have initiated mandamus litigation against Plaintiffs

21 in state court is not sufficient for this Court to find that a

22 genuine threat of enforcement exists at this time.  See, e.g.,

23 Bova, 564 F.3d 1093.  First, Plaintiffs may be successful in

24 defeating Intervenors' mandamus actions, and second, the party

25 charged with enforcing Measure E, i.e. the County, has given no

26 indication to this Court or to Plaintiffs that it intends to

27 proceed with its enforcement responsibilities under Measure E.

28 Thus, it is clear that Plaintiffs' claim is premature.

1    For these reasons, Plaintiffs' challenge to Measure E is not

2 ripe and must be dismissed.  As with standing, the Court cannot say

3 with certainty at this time that any further amendment would be

4 futile. Accordingly, the Court will grant leave to amend.

5    C.   Prudential Standing

6    At the hearing and in their briefs, Intervenors argued that

7 Plaintiffs lack prudential standing to maintain the instant action.

8 Specifically, Intervenors contend that even with the addition of

9 two out-of-state plaintiffs who allegedly haul waste to the Potrero

10 Hills Landfill, the allegations of the FAC are insufficient to

11 establish prudential standing, which Plaintiffs contested at the

12 hearing.  Intervenor SPRAWLDEF countered that if there is further

13 factual support for Plaintiffs' conclusory allegations to establish

14 prudential standing, then Plaintiffs should amend the FAC to

15 include this concrete factual support.  Hearing Transcript, Doc.

16 #84 at pgs. 31-32:16-13. Sierra Club, on the other hand, asserted

17 that any amendment would be futile, because no party could, in good

18 faith, allege that Measure E is, or should be, enforced against

19 out-of-state waste.  Without a showing that Measure E applies to

20 in-state commerce, no out-of-state plaintiffs could show any

21 injury.  Hearing Transcript, Doc. #84 at pgs. 32-33:16-6.

22    Separate from Article III standing requirements are

23 "judicially self-imposed limits on the exercise of federal

24 jurisdiction, founded in concern about the proper – and properly

25 limited – role of the courts in a democratic society . . . commonly

26 referred to as prudential standing." City of Los Angeles v. County

27 of Kern, 581 F.3d 841, 845 (9th Cir. 2009).  There are three

28 prudential concerns: (1) whether a plaintiff's alleged injury falls

12

1   within the "zone of interests" protected by statute or

2   constitutional provision at issue; (2) whether the complaint raises

3   nothing more than abstract questions, amounting to generalized

4   grievances; and (3) whether the plaintiff is asserting his or her

5   own legal rights and interests, rather than those of third parties.

6   Valley Forge Christian College v. Americans United for Separation

7   of Church and State, Inc., 454 U.S. 464, 474-75 (1982).

8        Only the first prudential doctrine is at issue in this case,

9   as it commonly governs claims "under the negative [] Commerce

10  Clause . . . ." Kern, 581 F.3d at 846.  The "zone of interest"

11  test is not met if a plaintiff's interests are marginally related

12  to, or inconsistent with, the purposes implicit in the relevant

13  constitutional provision.  Kern, 581 F.3d at 847.  The Ninth

14  Circuit has recently reiterated that "[f]inancial injury, standing

15  alone, does not implicate the zone of interests protected by the

16  dormant Commerce Clause.  That financial injury must somehow be

17  tied to a barrier imposed on interstate commerce." Id. at 848.

18      The Court agrees with Intervenors that Kern is almost

19  identical to the case at bar, and therefore dispositive.  Indeed,

20  like the plaintiffs in Kern, these Plaintiffs have failed to

21  demonstrate that their interest is "somehow [] tied to a barrier

22  imposed on interstate commerce." Id.  The fact that there are two

23  named out-of-state plaintiffs who are alleged to haul waste to

24  Potrero Hills Landfill does not change this Court's conclusion,

25  since there are no allegations in the FAC substantiating any of

26  Plaintiffs' claims regarding Measure E's application to the out-of-

27  state parties or any effect of Measure E that is not financial.

28  Compare Individuals for Responsible Government, Inc. v. Washoe

13

County, 110 F.3d 699 (9th Cir. 1997); accord Kern, 581 F.3d at 846-48.

Accordingly, the allegations of the FAC are insufficient to show how the injury to Plaintiffs goes beyond mere financial injury and meets the "zone of interest" test by burdening interstate commerce.  While, as discussed at the hearing, it is speculative that Measure E will be ever enforced against out-of-state waste, the Court cannot say with certainty at this stage that amendment would be futile; thus the Court will allow Plaintiffs leave to amend.

D.   Remaining Issues

As discussed above, the Ninth Circuit instructed this Court to consider the parties' additional arguments in support of and in opposition to the motions to dismiss.  The parties raised a number of additional arguments which were discussed at length at the hearing and in the briefs, including Pullman abstention, Colorado River abstention, abstention pursuant to the Declaratory Judgment Act, and the validity and timeliness of Plaintiffs' facial challenge and as-applied challenge.  These issues remain unaddressed and the Court need not reach them at this time due to its findings that Plaintiffs lack standing and the case is not ripe.

III. ORDER

For all the foregoing reasons, the Court hereby dismisses Plaintiffs' First Amended Complaint, without prejudice. If Plaintiffs elect to file an amended complaint, this Second Amended Complaint must be filed within twenty (20) days of the date of this

1   Order.   Responsive pleadings will be due within twenty (20) days of

2   the filing of the Second Amended Complaint.

3        IT IS SO ORDERED.

4   Dated: April 12, 2012

                                                    _____
5                                                   JOHN A. MENDEZ,
                                                    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28